IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MYUNG GA, INC.                    :

     v.                           :   Civil Action No. DKC 10-3464

MYUNG GA OF MD, INC.,             :
et al.                            :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this trademark infringement and unfair competition action is a motion to dismiss filed by Defendants Myung Ga of MD, Inc. and Ellicott Myung Ga of MD, Inc.[1] (ECF No. 18). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion will be granted in part and denied in part.

**I. Background**

Plaintiff Myung Ga, Inc. is a New Jersey corporation that develops and licenses Korean food recipes and marketing materials. (ECF No. 8 ¶ 9). Defendant Myung Ga of MD, Inc. is a Maryland corporation that operates a Korean restaurant in

---

[1] The court has identified Defendants by the names they use in their motions papers and the names in the caption of the complaint. Plaintiff also describes Defendants as "Defendant Myung Ga of Maryland, Inc. and Defendant Myung Ga of Md[.], Inc., trading as Ellicott Lighthouse Tofu & BBQ." (ECF No. 8 ¶¶ 7-8).

Rockville, Maryland.  (*Id.* ¶ 7).  Defendant Ellicott Myung Ga of MD, Inc. operates another Korean restaurant in Ellicott City, Maryland.  (*Id.* ¶ 8).

Plaintiff alleges that it owns a trademark on certain Korean characters that display the English words "Lighthouse, B.B.Q. & Tofu" underneath.  (*Id.* ¶ 10).  The Korean characters transliterate to "Bit Go Eul Myung Ga," which translates to "Lighthouse Noble House."  (*Id.* ¶ 11).  Plaintiff also alleges that it has developed and owns trade dress consisting of traditional Korean restaurant décor, such as "ancient Korean writing on the walls, faux traditional Korean roof and shingle designs, modified Korean traditional dress uniforms for staff, and wooden benches and accents."  (*Id.* ¶¶ 13-14).  Furthermore, Plaintiff claims that it has developed and owns various specific recipes, including recipes for tofu soup, Korean barbeque, pancakes, and stir fried squid.  (*Id.* ¶¶ 13, 16).

According to the complaint, Plaintiff has licensed these items – the trademark, trade dress, and recipes – to several entities over the last decade.  (*Id.* ¶¶ 12, 13).  In particular, from 2002 to 2010, Plaintiff licensed Myung Ga of S&S ("S&S"), Inc., as an exclusive licensee in the area of Virginia, Maryland, and Washington, D.C.  (*Id.* ¶¶ 17, 20).  That license

2

did not allow for the assignment of any rights. (*Id.* ¶ 19). Plaintiff avers, however, that S&S provided Defendants with "access" to its intellectual property without authorization. (*Id.* ¶ 23). Plaintiff states that both Defendants now "use" its trademark, trade dress, and recipes. (*Id.* ¶¶ 24-29).

On December 13, 2010, Plaintiff filed an amended complaint against Defendants alleging four types of claims: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (2) unfair competition, in connection with its trademark, trade dress, and recipes, under the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair competition for trademark infringement under Maryland law; and, (4) unfair competition for misappropriation of trade secrets under Maryland law. Plaintiff seeks injunctive relief, damages, interest, costs, and attorneys' and investigative fees.

Defendants moved to dismiss Plaintiff's claims on January 2, 2011. (ECF No. 18). Plaintiffs responded on February 1, 2011. (ECF No. 19). No reply was filed.

## II. Motion to Dismiss

### A. Standard of Review

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178

3

F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as

4

factual allegations, *Iqbal,* 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Although the standards outlined above should now be quite familiar, Plaintiff nevertheless spends much of its opposition arguing that *Iqbal* should not apply here (rather than defending the sufficiency of its complaint under the present standard). None of Plaintiff's arguments are ultimately convincing.

First, Plaintiff would seem to imply that *Iqbal* should not apply because the Federal Rules of Civil Procedure were amended after the case was announced. (ECF No. 19 ¶ 2). The most recent amendments to the Federal Rules of Civil Procedure left Rule 8(a)(2) and Rule 12(b)(6) untouched. More importantly, no

court has previously held that an amendment to any Federal Rule of Civil Procedure strikes all precedent pertaining to all of those rules.

Second, Plaintiff relies upon four unpublished decisions to contend that *Iqbal* does not reach intellectual property cases.[2] (ECF No. 19 ¶¶ 5-6). Plaintiff mischaracterizes these cases. In three of them, rather than applying a distinct pleading standard to intellectual property claims, the courts used the standard as announced in *Iqbal*, but determined that the plaintiffs had satisfied that standard. *See Softech Worldwide, LLC v. Internet Tech. Broad. Corp.*, No. 1:10CV651 JCC, 2010 WL 3418238, at *6 (E.D.Va. Aug. 23, 2010) (finding the plaintiff sufficiently pled elements of a copyright claim, while noting that the defendants' disagreement with the allegations "does not affect whether [the] complaint adequately states a claim"); *Tune

---

[2] Such an argument stands in tension with decisions in the courts of appeal that have applied *Iqbal* in the trademark context. *See, e.g.*, *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795-96 (5th Cir. 2011); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 & n.4 (6th Cir. 2009). It also overlooks the explicit command in *Iqbal* that the plausibility standard applies in "all civil actions." *Iqbal*, 129 S.Ct. at 1953. This court has also previously applied *Iqbal* in the trademark context. *See All-U-Need Temporary Servs. Inc. v. First Transit, Inc.*, No. DKC 09-3229, 2010 WL 25600089, at *4 (D.Md. June 18, 2010).

*Hunter, Inc. v. Samsung Telcoms. Am., LLC*, 2:09-cv-148-TJW, 2010 WL 1409245, at *4 (E.D.Tex. Apr. 1, 2010) (finding allegations that the defendants' "music identification systems" infringed the plaintiff's patent were sufficiently specific, "[i]n light of the technology at issue"); *Elan Pharma Int'l Ltd. v. Lupin Ltd.*, No. 09-1008 (JAG), 2010 WL 1372316, at *4 (D.N.J. Mar. 31, 2010) (finding allegations were sufficiently specific when the plaintiff claimed that the defendant infringed a patent by seeking approval to sell generic copies of the plaintiff's patented product). Similarly, in the final case, the court determined that the complaint satisfied Federal Rule of Civil Procedure 8(a)(2) when it identified specific infringing product lines that the defendant had produced. *Mark IV Indus. Corp. v. Transcore, L.P.*, C.A. No. 09-418 GMS, 2009 WL 4828661, at *3 (D.Del. Dec. 2, 2009). In its decision, the court declined to hold that *Iqbal* heightened the pleading standards for direct patent infringement claims because the specific issue was not before the Court. *Id.*

Finally, Plaintiff makes a broad argument that applying *Iqbal*'s standard "would be fundamentally unfair, as the Plaintiff requires access to the civil discovery process." (ECF

No. 19, at 3).[3] Every plaintiff, no doubt, would prefer to have access to discovery before facing the test of a motion to dismiss. But here again, Plaintiff ignores one of the central purposes of the plausibility standard: restraining unnecessary discovery. A plaintiff cannot simply file a hollow complaint and demand discovery. While "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S.Ct. at 1950. As the Supreme Court explained further in another context:

> [I]t is self-evident that the problem of discovery abuse cannot be solved by careful scrutiny of evidence at the summary judgment stage, much less lucid instructions to juries; the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings. Probably, then, it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially

---

[3] Plaintiff also argues there is "no reason to avoid the discovery process" because Defendants have not introduced "evidence that they are or were unaware of the Plaintiff and its intellectual property." (ECF No. 19, at 4). It is difficult to understand the import of Plaintiff's argument, given that Defendants are under no obligation to produce "evidence" at this stage of the proceeding.

8

> enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence.

*Twombly*, 550 U.S. at 559 (quotation marks and citations omitted). Plaintiff's protestations about the need for discovery are no reason to suspend the *Iqbal* standard here.

In short, *Iqbal* applies to this case.

**B.  Defendants' Alleged Use of Plaintiff's Trademark**

In Counts I, II, and III of the complaint, Plaintiff asserts claims for trademark infringement and unfair competition under the Lanham Act, as well as unfair competition under Maryland law. A portion of these claims is based on the Defendants' alleged use of Plaintiff's trademark.

The standards for asserting Lanham Act claims for trademark infringement and unfair competition based on the inappropriate use of a mark are largely the same. In particular, to allege either type of claim successfully, a plaintiff must establish "(1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred 'in commerce'; (4) that the defendant used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the defendant used the mark

9

in a manner likely to confuse consumers." *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001); *accord Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005). Likewise, "the test for trademark infringement and unfair competition under state law is the same as the test under the Lanham Act." *Sterling Acceptance Corp. v. Tommark, Inc.*, 227 F.Supp.2d 460, 460 (D.Md. 2002) (citing *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 422 (4th Cir. 1998); *Microsoft Corp. v. Grey Computer*, 910 F.Supp. 1077, 1088 (D.Md. 1995)). Thus, all three of Plaintiff's claims premised on its mark depend on a finding that Defendants' use creates a likelihood of confusion. *Cf. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995) ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved").

To be sure, the likelihood of confusion issue in an infringement claim is an inherently factual determination. *See Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992) (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778

F.2d 1352, 1356 n.5 (9th Cir. 1985)). Nevertheless, "a conclusory and 'formulaic recitation' of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss." *Hensley Mfg.*, 579 F.3d at 611. Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of *any* facts supporting a given claim cannot proceed.

Plaintiff alleges that Defendants "use" its trademark in "trade name, signage, and advertising" (ECF No. 8 ¶¶ 24, 27), and in manners that "are likely to cause confusion, or to create mistake, or to deceive the general purchasing public," (ECF No. 8 ¶¶ 39, 45, 57). Defendants argue that because Plaintiff has "fail[ed] to identify with specificity as to how Defendant infringed . . . [its] trademark[,]" it has not pled sufficient similarities to claim that the alleged infringing uses are likely to cause confusion. (ECF No. 18-1, at 8, 11). Defendants are correct.

Although Plaintiff alleges that Defendants have an infringing trade name, signage, and advertising, its claims merely paraphrase the text of 15 U.S.C. § 1114. This is exactly the sort of "formulaic recitation" of legal elements that will not suffice under the plausibility standard. *Iqbal*, 129 S.Ct.

11

at 1949. Plaintiff fails to allege any facts, for instance, that show similarities between its trademark and Defendants' trade name, signage, and advertising. Plaintiff does not allege that there has been any actual confusion. Nor does Plaintiff explain *how* Defendants use the marks and how such use might create a similar impression to Plaintiff's mark. There is no indication of the comparative qualities of the two marks. There is no mention of the sophistication of the consuming public. *See Georgia Pac. Consumer Prods., LP v. Von Drehle Corp.*, 618 F.3d 441, 454 (4th Cir. 2010) (listing factors relevant to issue of likelihood of confusion).[4] Although Plaintiff does not need to present facts speaking to all of the nine factors that make up the likelihood of confusion inquiry, a complaint is certainly insufficient when it falls to speak to any of them.[5]

---

[4] All of the factors in the likelihood of confusion test go to publicly available facts, as the entire issue is whether the public is likely to be confused. It would therefore be disingenuous for Plaintiff to suggest that these facts are unavailable.

[5] Plaintiff relies on Form 19 of the Federal Rules of Civil Procedure to argue that, in spite of *Iqbal*, it does not have to allege how its intellectual property was infringed. (ECF No. 19 ¶¶ 3-4). Plaintiff misreads the example copyright infringement complaint provided by Form 19. Form 19 shows that a complaint for copyright infringement should include an assertion that "[a]fter the copyright was issued, the defendant

Thus, Plaintiff has not sufficiently pled its claims relating to Defendants' alleged use of its trademark. Counts I and III will be dismissed without prejudice to Plaintiff's right to file an amended complaint adequately stating these counts within 21 days. Those portions of Count II relating to Defendants' alleged use of Plaintiff's mark will also be dismissed without prejudice, subject to the same conditions.

**C. Defendants' Alleged Use of Plaintiff's Trade Dress**

Count II advances a claim based on Defendants' alleged use of Plaintiff's trade dress. Section 43(a) of the Lanham Act provides a cause of action for trade dress infringement. *See* 15 U.S.C. § 1125(a); *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28-29 (2001). "Trade dress" is a product's total image and overall appearance, which may include attributes such as size, color, combinations of colors, shape, design, texture, graphics, or even particular sales techniques. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992); *accord Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.*, 87

---

infringed the copyright by publishing and selling a book entitled ____." The form instructs plaintiffs not only to assert that a defendant infringed a copyright, but also to identify the specific infringing product, *i.e.*, a book by a particular title.

13

F.3d 654, 657 (4th Cir. 1996). To plead a claim of trade dress infringement, a plaintiff must allege that: (1) its trade dress is primarily non-functional; (2) the alleged infringement creates a likelihood of confusion; and (3) the trade dress either (a) is inherently distinctive or (b) has acquired secondary meaning. *See id.* at 769; *Ashley Furniture Indus., Inc. v. Sangiacomo N.A. Ltd.*, 187 F.3d 363, 368 (4th Cir. 1999); *Leviton Mfg. Co., Inc. v. Universal Sec. Instruments, Inc.*, 304 F.Supp.2d 726, 736-38 (D.Md. 2004).

Plaintiff alleges that Defendants use its trade dress. Defendants argue that the trade dress infringement claim must be dismissed because Plaintiff has "fail[ed] to identify with specificity as to how Defendant infringed . . . [its] trade dress." (ECF No. 18-1, at 8). Much like its allegations with regard to the trademark, Plaintiff merely recites the elements of a trade dress infringement claim, (*see* ECF No. 8 ¶¶ 14, 15, 45), without alleging how Defendants have infringed on its trade dress. *See, e.g.*, *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F.Supp.2d 1369, 1376 (M.D.Fla. 2008) (dismissing trade dress infringement claims when the plaintiff's complaint failed to explain how the defendant infringed on its trade dress). Lacking any allegations concerning the nature of the

infringement, there are necessarily no factual allegations that would establish that Defendants' use of the alleged trade dress will cause a likelihood of confusion. Vague allegations that a defendant "uses" protected trade dress are not enough. The portion of Plaintiff's Count II that asserts a claim for trade dress infringement claim will be dismissed without prejudice to Plaintiff's right to file an amended complaint adequately stating the claim within 21 days.

**D.   Defendants' Alleged Use of Plaintiff's Recipes**

Finally, Plaintiff alleges that Defendants misappropriated its recipes. Based on that misappropriation, Plaintiff brings another claim under Section 43(a) of the Lanham Act (as part of Count II) and a separate claim under the Maryland Uniform Trade Secrets Act ("MUTSA") (as Count IV). Because Defendants do not challenge Plaintiff's claim under 15 U.S.C. § 1125 as it pertains to the recipes, the court focuses only on the MUTSA claim.

Under the MUTSA, misappropriation includes acquiring a trade secret through improper means. Md.Code Ann., Com. Law § 11-1201(c)(1). Section 11-1201(e) defines trade secrets as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives

> independent economic value, actual or potential from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Defendants argue that Plaintiff has not provided any factual basis to establish either element.[6] The court disagrees.

First, Plaintiff has alleged facts rendering it plausible that the disputed recipes have independent economic value. The complaint alleges that Plaintiff's "several" previous licensing agreements indicate the "secret and marketable nature" of these recipes. (ECF No. 8 ¶¶ 12, 63). Further, Plaintiff alleges that it is "in the business of developing and licensing Korean

---

[6] Defendants also make a cursory argument that "it is not clear whether Plaintiff's Recipes are subject to Maryland or New Jersey law for the purpose of seeking protection as trade secrets." (ECF No. 18-1, at 13). "Maryland ordinarily follows the *lex loci delicti* rule when analyzing choice of law problems in tort cases." *Proctor v. Washington Metro. Area Transit Auth.*, 412 Md. 691, 726 (2010). The only plausible inference from the complaint is that any misappropriation (and use of the trade secrets) occurred in Maryland; Maryland law would therefore govern. *RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F.Supp.2d 660, 666 (D.Md. 2009); *accord Manuel v. Convergys Corp.*, 430 F.3d 1132, 1140 (11th Cir. 2005) ("In a trade secret misappropriation case, the *lex loci delicti* is not the place where the information was learned, but where the tortious act of misappropriation and use of the trade secret occurred." (quotation marks omitted)).

food recipes and marketing material." (ECF No. 8 ¶ 9). At the very least, a licensing agreement provides economic value to the licensor through the royalty rate (or other form of payment) provided by the licensee. *Cf. Costar Group, Inc., v. Loopnet, Inc.*, 164 F.Supp.2d 688, 710 (D.Md. 2001) (discussing *Playboy Enters. Inc. v. Sanfilippo*, 46 U.S.P.Q.2d 1350, 1354-56 (1998)) (characterizing a license agreement for photographs as evidence of "independent economic value" in a copyright case). One can reasonably infer that those payments derive from the non-public nature of Plaintiff's recipes.

Defendants also argue that Plaintiff did not sufficiently allege that it had taken reasonable steps to protect the secrecy of its recipes. In particular, Defendants argue that Korean menus are not trade secrets because they are made publically available at restaurants. Defendants misunderstand Plaintiff's claim. Plaintiff's trade secrets claim is not based on its menu, but rather on individual recipes for specific items included in the menu, such as stir fried squid. (*See* ECF No. 8 ¶ 16). The secret is the manner and process by which the food is made, not the product of the process (*i.e.*, the food itself). *See, e.g.*, *Uncle B's Bakery, Inc. v. O'Rourke*, 920 F.Supp. 1405, 1428-29 (N.D.Iowa 1996) (finding recipe for publicly-sold bagel

17

amounted to trade secret). *But see Buffets, Inc. v. Klinke*, 73 F.3d 965, 968 (9th Cir. 1996) (finding recipes did not amount to trade secrets where they were neither novel nor valuable).

In addition, Plaintiff's disclosure of its recipes to licensees does not necessarily destroy its status as a trade secret. *See RaceRedi Motorsports, LLC*, 640 F.Supp.2d at 668 (quoting Md.Code Ann., Com. Law § 11-1201(c)(2)) ("The statutory definition of a misappropriation includes disclosure of a trade secret '[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use[.]'"). To the contrary, the exclusive nature of the license with Myung Ga of S&S, Inc., and the fact that it did not allow for assignment of rights, suggests that Plaintiff took measures to ensure the secrecy of its recipes. *Cf. id.* (holding the existence of a Confidentiality Agreement "easily satisfies the second part of the trade secret definition for purposes of a Rule 12(b)(6) motion.").

Defendants' motion to dismiss Plaintiff's claim for misappropriation of trade secrets will be denied.

**III. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim will be granted in part and denied in part.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
